UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ALBERTO DIAZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | Civil Action No:  SA-05-CA-209-XR |
| | ) | |
| RIO GRANDE RESOURCES CORP. et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

On this date, the Court considered the status of this case.  Defendants filed a Counterclaim in Interpleader to Enforce Settlement against Plaintiff Grace Jasso on June 30, 2006.  Defendants argued that this lawsuit was settled on February 1, 2006, when counsel for all plaintiffs signed and returned a binding settlement letter.  The settlement agreement required that all plaintiffs sign and return releases, but Plaintiff Grace Jasso failed to sign her release.  Defendants asserted that Jasso's failure to sign the release is a breach of the settlement agreement, and filed a "counterclaim in interpleader."  Defendants sought a court order enforcing the settlement and awarding Defendants their attorney's fees related to the interpleader claim.  The Court set an evidentiary hearing to determine whether Plaintiff had agreed to the settlement and/or whether her attorney was authorized to negotiate and enter a settlement on her behalf.  The hearing occurred on October 4, 2006. Plaintiffs' attorney Harry Arthur and Plaintiff Grace Jasso testified at the hearing.  Arthur testified that Jasso consented to the settlement.  Jasso testified that she never physically saw Arthur prior to the October 4 hearing.  She testified further to the following: (1) prior to March 16, 2005 (the date the Complaint was filed), she was approached by a "paralegal" who presented her a power of

1

attorney form with no attorney or law firm name listed; (2) she was under the impression that a lawyer from San Antonio was going to be her attorney; (3) no lawyer or law firm contacted her until she received a January 17, 2006 letter from Arthur, a Houston attorney, advising her of Defendants' settlement offer; (4) she informed Arthur's office that she needed to think about it and consult with her in-laws prior to agreeing to any settlement; and (5) she never approved or authorized a settlement.

Defendants submitted post-hearing briefing regarding the effects of the hearing on the settlement. Defendants argue that the Court may enforce the settlement agreement because, under Texas law, (1) the agreement complies with Rule 11, (2) Plaintiff and Arthur had an attorney-client relationship, and (3) Arthur had authority to settle. Defendants argue that a retained attorney is presumed to possess authority to enter into a settlement agreement on behalf of a client, and Plaintiff had the burden to rebut that presumption by clear, affirmative evidence. Defendants assert that Texas courts refuse to enforce settlement agreements when it is uncontested that the attorney lacked authority, but when the evidence is controverted and raises a fact issue, settlements are upheld. Brief at 9.

Although the district court has inherent power to enforce an agreement to settle a case pending before it summarily, when opposition to enforcement of the settlement is based not on the merits of the claim but on a challenge to the validity of the agreement itself, the parties must be allowed an evidentiary hearing on disputed issues of the validity and scope of the agreement. *Mid-South Towing Co. v. Har-win, Inc.*, 733 F.2d 386, 390 (5th Cir. 1984). This is the procedure approved by the Fifth Circuit and it is the procedure the Court followed in this case. At the hearing, the parties disputed whether attorney Harry Arthur had authority to settle Jasso's claims. The Fifth

Circuit has long adhered to the requirement that counsel be given authority to settle by the client:

> The law is settled that an attorney of record may not compromise, settle or consent to a final disposition of his client's case without express authority ....   However, this general principle must be considered in connection with the rule that an *attorney of record is presumed to have authority* to compromise and settle litigation of his client, and a judgment entered upon an agreement by the attorney of record will be set aside only upon *affirmative proof* of the party seeking to vacate the judgment that the attorney had no right to consent to its entry.

*Id.*

Defendants argue that Texas law should govern the enforceability of the settlement agreement in this case.  The Fifth Circuit has held that state law governs enforcement in diversity actions, but has applied federal law in Title VII and general maritime actions because questions regarding the enforceability or validity of settlement agreements are determined by federal law where the substantive rights and liabilities of the parties derive from federal law.  *Mid-South*, 733 F.2d at 389.  The Fifth Circuit has not decided whether state or federal law would apply in a Price-Anderson Act case or in a case in which the claim is ostensibly federal but substantive rights and liabilities are determined by reference to state law.  However, the Fifth Circuit has framed the relevant inquiry as "whether there exists a valid and substantial federal interest or policy that requires the application of federal law as an exercise of interstitial lawmaking to protect or to effectuate the federal scheme." *In re Omni*, 60 F.3d 230, 232 (5th Cir. 1995); *see also Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir. 1987) ("[A]lthough federal courts possess the inherent power to enforce agreements entered into in settlement of litigation, the construction and enforcement of settlement agreements is governed by principles of state law applicable to contracts generally.").  When there is no strong federal interest in the issue of the validity of a particular settlement, the settlement issue is best resolved by reference to state contracts law.  *Id.*  Accordingly, since the agreement at issue

here was negotiated and to be performed in Texas, the validity and enforceability of the agreement should be determined under Texas law.

Under Texas law, the party seeking to enforce a settlement agreement in a pending action may amend his pleadings to bring a breach of contract action against the non-settling party, and the judge may enforce the settlement as a written contract upon demonstration of proof. *Lefevre v. Keaty*, 191 F.3d 596, 598 n.1 (5th Cir. 1999); *Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 658 (Tex. 1996); *Batjet, Inc. v. Jackson*, 161 S.W.3d 242, 245 (Tex. App.–Texarkana 2005, no pet.) ("[A] claim to enforce the settlement agreement should be asserted in [the district] court under the original cause number, such as through an amended pleading or counterclaim."). If the settlement meets the requirements of Rule 11 and is an enforceable contract, it can be enforced by summary judgment. *In re Omni*, 60 F.3d at 232.

An agreement involving pending litigation complies with Rule 11 if it is in writing, signed, and filed with the papers as part of the court's record. TEX. R. CIV. P. 11; *Ebner v. First State Bank*, 27 S.W.3d 287, 294 (Tex. App.–Austin 2000, pet. denied). The Court agrees with Defendants that the January 17, 2006 letter agreement complies with Rule 11. The agreement is written and is signed by counsel for Defendants and Arthur, counsel for Plaintiff Jasso. It was filed by Defendants along with Defendants' "Counterclaim in Interpleader to Enforce Settlement." The Court finds that, even if Plaintiff was not aware that Arthur was her attorney at the time she signed the power of attorney, she ratified the attorney-client relationship with Arthur when she returned his call and engaged in discussions about the settlement without repudiating his representation.[1]

---

[1]During the evidentiary hearing, Jasso never explained why she did not question Arthur or dispute during this call the attorney-client relationship. That said, this Court disapproves of the alleged "paralegal's" action and the complicity of certain attorneys in this "round up" of clients.

Even if the agreement complies with Rule 11, however, it must still be an enforceable contract. Rule 11 is simply a minimum requirement for enforcement of agreements touching pending litigation. *Cothron Aviation, Inc. v. Avco Corp.*, 843 S.W.2d 260, 263 (Tex. App.–Fort Worth 1992, writ denied). "Generally, a court will indulge every reasonable presumption to support a settlement agreement made by a duly employed attorney." *Ebner*, 27 S.W.3d at 300. Thus, a retained attorney is presumed to possess express authority to enter into a settlement agreement on behalf of a client. However, when the evidence reveals that the attorney did not have the client's authority to agree, the agreement will not be enforced. *Id.*; *see also Breceda v. Whi*, 187 S.W.3d 148, 152 (Tex. App.–El Paso 2006, no pet.); *Cleere v. Blaylock*, 605 S.W.2d 294, 296 (Tex. Civ. App.–Dallas 1980, no writ); *see also Johnson v. Rancho Guadalupe, Inc.*, 789 S.W.2d 596, 598 (Tex. App.–Texarkana 1990, writ denied) ("A compromise by an attorney without his client's knowledge or consent, which has the effect of depriving the client of his day in court, is an unauthorized act."). Thus, the presumption of authority of the attorney is a rebuttable one. *Breceda*, 187 S.W.3d at 152.

Authority may be either actual or apparent. *Ebner*, 27 S.W.3d at 300. Actual authority is authority that the principal intentionally conferred on the agent or allowed the agent to believe was conferred. *Id.* Apparent authority exists when conduct by the principal leads a reasonable third party to believe that the agent has the authority that he purports to exercise. *Id.* The principal must make some manifestation to the agent (actual authority) or a third party (apparent authority) that he is conferring such authority. *Id.* Defendants make no argument, nor do the facts indicate, that Arthur had apparent authority to settle. Thus, the issue is whether Arthur had actual authority to enter the settlement agreement. At the hearing, Arthur testified that Plaintiff Jasso consented to the settlement

5

and thereby authorized him to enter the settlement agreement.  However, Plaintiff Jasso testified that she never consented to the settlement, instead telling Arthur that she needed to think about it, and thus she never authorized Arthur to enter into the settlement.

Defendants argue that, when the evidence is controverted and raises a fact issue, settlements are upheld.  Defendants misconstrue the law.  Defendants cite *Williams v. Nolan*, 58 Tex. 708 (1883), *Infante v. Bridgestone/Firestone, Inc.*, 6 F. Supp. 2d 608 (E.D. Tex. 1998), and *Webb v. Webb*, 602 S.W.2d 127 (Tex. Civ. App.–Austin 1980, no writ), in support of their position.  In *Webb v. Webb*, the attorney who settled testified that he thought and intended that the cases were settled, but later realized that he had misunderstood his client's instructions to him and that, in fact, he did not have settlement authority.  The court took the motion for judgment enforcing the settlement agreement under advisement, and later set the case for a pre-trial conference.  Upon the basis of the appellant's failure to appear at the hearing and the testimony previously heard, the district court rendered judgment that the settlement agreement should be enforced.  Appellant argued that the district court erred in enforcing the alleged settlement agreement because there was an unresolved fact issue concerning counsel's authority to settle that should have been tried to a jury.  The court of appeals agreed that a fact question was presented as to the authority of counsel for appellant to enter into the settlement agreement, and that appellant was entitled to a jury determination of the dispute.  However, the court of appeals held that appellant waived the right to a jury determination by failing to object to the lack of a jury at the evidentiary hearing and failing to appear at the pre-trial conference, one purpose of which was to determine whether the case would require a jury trial.  After reviewing the entire record, the Court of appeals affirmed, concluding that the district  court's finding of authority was not so against the great weight and preponderance of the evidence as to be

manifestly unjust.  Thus, *Webb v. Webb* does not stand for the proposition that, when the issue of authority is disputed, the settlement is enforced.  Rather, it holds that, because the appellant waived its right to a jury determination of the issue of authority, the trial court was entitled to review the evidence and determine the credibility of the witnesses and make a determination.  Because the trial court was entitled to accept part of the witness testimony and disregard the balance, and the finding of authority was not so against the great weight and preponderance of the evidence as to be manifestly unjust, the enforcement of the settlement was upheld.

In *Infante v. Bridgestone/Firestone*, the district court conducted a hearing on the defendant's motion to enforce the settlement agreement.  The testimony of both defendants' counsel and plaintiff's attorney indicated that a settlement was reached and that the plaintiff agreed to the settlement through her attorney, and that the attorney had authorization to make the settlement enforceable by having it read into the record.  *Infante*, 6 F. Supp. 2d at 610.  The court acknowledged that the presumption of authority to settle is rebuttable, but found "no evidence that indicates that at the time the settlement was reached on December 15, 1997, or at the time that the settlement was read into the record on January 5, 1998, [plaintiff] had withdrawn [her attorney's] authority to settle her case."  *Id.*  Rather, her testimony was contradictory in that she stated both that she never gave authority to settle on the terms to which he agreed and that she had accepted the settlement at first, but later revoked her acceptance on some unspecified date.  *Id.* at 610-11. Thus, based on the entire record, the district court found that plaintiff failed to produce sufficient evidence that her attorney had no authority when he agreed or that she revoked his authority prior to the settlement being read into the record.  As in *Webb*, the district court reviewed the evidence and determined whether there was sufficient evidence to establish a lack of authority.  Because the court found insufficient

evidence (not because there was conflicting evidence), the court enforced the settlement.

Last, in *Williams v. Nolan*, 58 Tex. 708 (1883), the appellant was attempting to set aside an agreed judgment entered upon a settlement agreement.  Apparently, there were averments in the petition that denied the attorney's authority to settle, yet also allegations that "bear strong evidence that the attorney was authorized to make the agreement, or at least that such conversations had passed between the attorney and the appellants as authorized him to believe that he was so authorized."  Thus, because every reasonable presumption is to be indulged in favor of a settlement made by an attorney duly employed, especially after a consent judgment is entered upon the agreement, and because the appellant's evidence did not clearly demonstrate a lack of authority, the court affirmed the judgment.

Thus, in the cases cited by Defendants, either the non-consenting party did not unequivocally demonstrate a lack of authority or the district court simply resolved conflicting evidence based on its assessment of the evidence and witness credibility.  The facts of this case more closely resemble *Ebner v. First State Bank*, 27 S.W.3d 287 (Tex. App.–Austin 2000, pet. denied).  In that case, the evidence reflected that the client denied ever authorizing her attorneys to settle the suit, and thus the court held that disputed fact issues existed as to whether the attorneys had actual authority to bind the client.  Accordingly, the court reversed the trial court's grant of summary judgment.

This case is in an unusual procedural posture.  The original claims in this case are federal law claims under the Price Anderson Act.  Under that act, the substantive rules of decision are governed by state law to the extent it does not conflict with the Act.  42 U.S.C. § 2214(hh).  Plaintiffs demanded a jury trial on their claims.  After the settlement fell through, Defendants filed a "Counterclaim in Interpleader to Enforce Settlement."  Though styled as an "interpleader," the

8

counterclaim did not meet the requirements for an interpleader action, and no money was ever placed in the Court's registry.  The relief sought by the counterclaim in interpleader was characterized as a motion to enforce settlement agreement pursuant to federal procedure.  Pursuant to that procedure, the Court conducted an evidentiary hearing.  After evaluating the evidence presented at the hearing, the Court finds (1) the testimony of Jasso that she did not authorize Arthur to settle is credible and (2) the testimony of Arthur that Jasso did authorize him to settle is not credible.  The Court disagrees with Defendants that Jasso failed to present clear, affirmative proof that Arthur lacked settlement authority.  Her unequivocal testimony that she never authorized Arthur to settle could not be more clear and affirmative.  Accordingly, applying federal law and procedure, the Court denies the motion to enforce settlement agreement.

However, Defendants argue, and the Court agreed as explained above, that Texas law should govern the enforcement of the settlement agreement.  Under Texas law, Defendants should have plead a counterclaim for breach of contract/specific performance, subject to the normal rules of pleading and proof.  *See Mantas*, 925 S.W.2d at 657.  Treating the counterclaim as such, and the current brief in support of the motion to enforce settlement as a motion for summary judgment, the Court concludes that fact issues exist that would preclude summary judgment.  Accordingly, even following the prescribed procedure under Texas law, the motion is denied.

If this is treated as a traditional counterclaim for breach of contract/specific performance, however, the remaining question is whether the Court's determination settles this issue or whether Defendants are entitled to a jury trial on this issue.  No party requested a jury or objected to the lack of a jury at the evidentiary hearing.  Following *Webb*, it appears that the right to a jury determination on this issue was waived.  In addition, Defendants have moved the Court to resolve the issue and

have not suggested that a jury determination would be appropriate.  Accordingly, it appears that Defendants have waived the right to have a jury determine the issue of Arthur's authority, and the Court may determine the issue.  As noted, viewing the evidence presented and assessing the credibility of the witnesses, the Court would find that Arthur lacked authority to enter into the settlement agreement and accordingly Plaintiff Jasso is not bound by the agreement.

The deadline for amending pleadings was January 13, 2006.  Should Defendants contend that they are entitled to a jury trial on the settlement issue, they must file a motion for leave to amend pleadings to assert a counterclaim for breach of contract/specific performance and include briefing supporting their position that they are entitled to a jury trial no later than **November 29, 2006**.  If Defendants fail to do so, the Court will enter a partial judgment in favor of Plaintiff on Defendants' "counterclaim in interpleader."

### Conclusion

For the reasons stated herein, Defendants' Counterclaim in Interpleader to Enforce Settlement, being treated as either a Motion to Enforce Settlement or a Motion for Summary Judgment, is DENIED (docket no. 52) in all respects.

Plaintiff shall either obtain counsel and cause her counsel's appearance to be entered or inform the Court that she wishes to proceed *pro se* within two weeks of this Order (no later than **November 29, 2006**) .

SIGNED this 15th day of November, 2006.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE